CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 29 2010

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ANNETTE F. JACKSON, | ) | |
| | ) | Civil Action No. 7:09-CV-00297 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | By: James C. Turk |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

Plaintiff Annette F. Jackson ("Jackson") was denied supplemental security income benefits by the Commissioner of Social Security. Jackson appealed the decision to this court, and the matter was referred to United States Magistrate Judge Michael F. Urbanski for a Report and Recommendation. On June 30, 2010, the Magistrate Judge issued an opinion recommending that this Court affirm the Commissioner's decision denying benefits. On July 6, 2010, Jackson filed her objections to the Magistrate Judge's recommendations. Neither party requested oral arguments. Accordingly, the case is now ripe for decision. For the following reasons, the Magistrate Judge's Report and Recommendation will be adopted in full.

### I. Facts and Procedural History

Jackson applied to the Commissioner of Social Security ("Commissioner") for supplemental security income benefits on May 9, 2006, alleging disability beginning on November 1, 2005. Jackson claimed that she had to stop working in December 2005 because of constant pain and fibromyalgia. Administrative Record ("R.") 137. She claimed that she could no longer stand for long periods, bend over, or lift because of back and arm pain. R. 138. The

1

Commissioner denied Jackson's application for benefits initially on July 7, 2006, and again upon reconsideration on October 5, 2006. R. 16. Jackson then timely filed a written request for a hearing on November 9, 2007. *Id.* Jackson appeared and testified at the administrative hearing on June 20, 2007. *Id.*

On October 27, 2007, the administrative law judge ("ALJ") found that Jackson had a number of severe impairments including degenerative disc disease, alcoholism, fibromyalgia, status post assault/fractures, anxiety, and depression. However, the ALJ concluded that Jackson retained the residual functional capacity ("RFC") to perform a range of light work, and that jobs exist in significant numbers in the national economy that Jackson can perform. R. 32. Accordingly, the ALJ concluded that Jackson is not disabled under the Social Security Act. R. 33. The Appeals Council denied Jackson's request for review on May 22, 2009, and Jackson then appealed to this Court.

## II. Standard of Review

This case is currently before the Court on the Report and Recommendation of the United States Magistrate Judge. The Magistrate Judge concluded that substantial evidence supports the Commissioner's decision that Jackson does not satisfy the Social Security Act's entitlement conditions for supplemental security income. Jackson objects to the Magistrate Judge's Report and Recommendation on two grounds. First, that there was insufficient evidence to support the ALJ's finding that Jackson retained an RFC to perform a range of light work because the ALJ failed to accord proper weight to the opinion of Jackson's treating psychologist, Dr. Neal Musselman. Second, Jackson contends that the ALJ should have sought a consultative examination to confirm Jackson's ability to work.

As the presiding officer at the administrative hearing, the ALJ makes factual determinations and resolves evidentiary conflicts. *Hines v. Bowman*, 872 F.2d 56 (4th Cir. 1989). The Court gives deference to the ALJ's factual determinations and reviews them only for clear error. *Estep v. Richardson*, 459 F.2d 1015, 1017 (4th Cir. 1972).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. *Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983); *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

The Court reviews the Magistrate Judge's Report and Recommendation *de novo*. *See* 28 U.S.C. § 637(b)(1) (2000). The Court must determine whether the Commissioner's findings are supported by substantial evidence and whether the correct legal standards were applied. *See* 42

U.S.C. § 405(g) (2000). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" *Id.* (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. *See Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. *Perales*, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); *Perales*, 402 U.S. at 401.

### III. Analysis

After conducting a *de novo* review of the administrative record, the Court accepts the Magistrate Judge's Report and Recommendation and finds that the Commissioner's conclusion that Jackson does not satisfy the Social Security Act's entitlement conditions is supported by substantial evidence. In making this finding, the court overrules Jackson's objections to the Report and Recommendation.

#### A. The ALJ's Weighting of Dr. Musselman's Opinion

Jackson first contends that the ALJ failed to accord proper weight to the opinion of Jackson's treating psychologist, Dr. Musselman. According to Jackson, Dr. Musselman's report is inconsistent with a finding that Jackson retained the RFC to perform a range of light work. Thus, had the ALJ fully credited the report, Jackson could not have been properly denied benefits.

As the Magistrate Judge found, the ALJ's consideration of the medical reports in this case was both comprehensive and accurate. The ALJ examined and documented the medical evidence in painstaking detail over the course of thirteen single-spaced pages. The ALJ evaluated the findings of Jackson's treating professionals, Dr. Bikas Sharma, Dr. Musselman, and Ms. Sharon Horton . After scrupulously evaluating the record, the ALJ found that Jackson's disability allegations were at odds with her activities of daily living. The ALJ concluded that

> the medical evidence is not supportive of total disability based upon the clinical findings and the claimant's activities of daily living. The above residual functional capacity is supported by the relatively benign objective findings, the conservative degree of treatment the claimant has received, the opinions of the State Agency medical consultants, the claimant's treating physician (Dr. Sharma), and the record as a whole. The undersigned Administrative Law Judge also notes that no treating or examining physician has opined the claimant has limitations that would preclude all work related activities.

R. 31. The Court agrees with both the ALJ and the Magistrate Judge that there is substantial evidence supporting the opinion that Jackson is able to perform some light duty work. The Court also agrees with the Magistrate Judge that the ALJ properly evaluated and weighted all of the medical opinions in the administrative record, including that of Dr. Musselman, who completed a detailed psychiatric evaluation and two follow-up evaluations.

Jackson bases her argument that there was insufficient evidence for the ALJ to find an RFC on one document in particular: the "Medical Assessment of Ability to Do Work-Related

5

Activities (Mental)," completed by Dr. Musselman on May 1, 2007. R. 446–47. On this stock form provided by the Social Security Administration, Dr. Musselman notes that Jackson had a poor ability to deal with the public, interact with supervisors, function independently, understand complex job instructions, and relate predictably in social situations. Dr. Musselman also notes that Jackson had a fair ability to follow work rules, relate to co-workers, use judgment with the public, function independently, maintain attention and concentration, follow both simple and detailed job instruction, and behave in an emotionally stable manner. At the hearing, a vocational expert testified that a person reflecting the characteristics detailed in Dr. Musselman's report would have no job options.

However, the ALJ accorded the report "very little weight" because it was "not supported by objective clinical findings, and is not consistent with counseling notes, her activities of daily living, or her assessed GAF scale score." R. 31. The ALJ's analysis is supported by the record. Dr. Musselman's sparing clinical notes do not give credence to Jackson's argument. Further, Dr. Musselman contradicted his first report by a subsequent report on January 20, 2008. R. 514–15. In the second report, completed on the same form as the first report, Dr. Musselman increased Jackson's ability level to deal with the public, interact with supervisors, and function independently from "poor" to "fair." The second report also increased Jackson's ability level to follow simple job instructions from "fair" to "good." The inconsistency of the reports both diminishes the credibility of the first report's findings that Jackson is essentially unemployable and provides strong evidence from which the ALJ could properly determine that Jackson had the RFC to perform a light range of work limited to simple tasks having no contact with the public. Accordingly, the ALJ's weighting of Dr. Musselman's first report is supported by substantial evidence and the ALJ's decision cannot be overturned on that ground.

## B. The ALJ's Failure to Seek a Consultative Examination

Jackson next argues that the ALJ should have sought a consultative examination to confirm Jackson's ability to work. Specifically, Jackson objects to the ALJ's findings that Jackson could lift or carry 20 pounds occasionally and ten pounds frequently, that she can stand in place or walk for six hours per day, and that she can occasionally balance, stoop, kneed, crouch, and crawl. R. 24. Jackson argues that the ALJ was required to order a consultative examination because the evidence on which she determined that Jackson had an RFC was "not sufficient to support a decision on [the] claim." 20 C.F.R. § 416.919(b); *see also Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (holing that "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate"). Jackson further notes that when the ALJ considered additional medical evaluations and procedures performed on Jackson by non-state agency physicians, the ALJ changed her initial finding that Jackson could perform medium work to find that Jackson could only perform light work. Jackson accuses the ALJ of "playing doctor" in reaching that determination without first seeking a consultative examination, thereby basing her RFC determination on insufficient evidence.

The Social Security regulations direct claimants that a consultative examination may be ordered "[i]f your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disable." 20 C.F.R. §§ 404.1517, 416.917. The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. This Court's inquiry is thus limited to evaluating whether the ALJ had sufficient medical evidence to make a determination on Jackson's disability.

The regulations further provide that "[w]e will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). So long as the evidence contained no such problems, the ALJ had sufficient evidence to make a determination without ordering a consultative examination.

The Court finds that the ALJ did in fact have sufficient evidence without a consultative examination, and did not, as Jackson suggests, "play doctor" when she determined that Jackson retained the RFC to do light work. The medical evaluations preformed on Jackson by non-state agency physicians indicate merely that Jackson fell down some stairs and had some rib pain resulting from an assault. It is plain that these evaluations reflect nothing of any functional significance. Furthermore, this evidence was addressed by the ALJ in her decision. As the Magistrate Judge reported, given Jackson's admission that her primary treating doctor told her that she could perform light work, the consistent assessments of the state agency providers, and the abject lack of anything significant in the medical records post-dating the state agency physicians' reviews, there is no reason for the ALJ to have sought any further medical evidence, nor was a consultative examination required. The administrative record as analyzed by the ALJ contained no material conflicts or ambiguities, contained sufficient information, and was adequately based on clinical diagnostic techniques. Accordingly, the ALJ had sufficient evidence to make a determination on Jackson's RFC without ordering a consultative examination and the ALJ's decision cannot be overturned on that ground.

## IV. Conclusion

After a *de novo* review of the record, the court finds that the ALJ's decision was supported by substantial evidence and that the ALJ applied the correct legal standards. Accordingly, the Court will adopt the Magistrate Judge's Report and Recommendation in full and overrule Jackson's objections. An appropriate order shall this day issue.

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTER:** This 29th day of September, 2010.

/s/ James C. Turk
Senior United States District Judge